## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

JOHN DOE,

*Plaintiff*,

v.

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA and
THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,

*Defendant*.

---

## COMPLAINT AND JURY DEMAND

---

The Plaintiff, John Doe, by and through his counsel of record, McDermott Law, LLC, for his

Complaint against Defendants Berkshire Life Insurance Company of America and Guardian Life

Insurance Company of America, states, alleges, and avers as follows:

## I.       JURISDICTION, VENUE, PARTIES

1.       Plaintiff, (hereinafter referred to as "Plaintiff" or "Mr. Doe"), at all times pertinent

hereto, was and is a resident and domiciliary of the State of Colorado.[1]

2.       Mr. Doe is the policyholder of four private Disability Income Policies purchased from

Berkshire Life Insurance Company of America and Guardian Life Insurance Company of America

(collectively referred to as "Defendants").

---

[1] Mr. Doe has filed a contemporaneous Motion to Proceed Using Pseudonym. (Attached as **Exhibit 1**).

3.      Berkshire Life Insurance Company of America ("Berkshire") is a Massachusetts corporation registered with the Colorado Division of Insurance to conduct the business of insurance in the State of Colorado.

4.      Berkshire's principal place of business is 700 South Street, Pittsfield, MA 01201.

5.      Berkshire is a wholly-owned stock subsidiary of and administrator for The Guardian Life Insurance Company of America ("Guardian").

6.      Guardian is a New York Corporation registered with the Colorado Division of Insurance to conduct the business of insurance in the State of Colorado.

7.      Guardian's principal place of business is 7 Hanover Squire, New York, NY 10004-26616.

8.      Guardian, through its subsidiaries, including Berkshire, provides insurance products and services.

9.      Berkshire is an underwriting insurance company of Guardian.

10.     Guardian issued private Disability Income Policies (Policies Nos. G9049960 and G9157280) to Mr. Doe in the State of Colorado on September 23, 2000, and September 23, 2001, respectively (the "Guardian Policies").

11.     Berkshire issued private Disability Income Policies (Policies Nos. Z9091010 and Z9185580) to Mr. Doe in the State of Colorado on September 23, 2003, and September 23, 2005, respectively (the "Berkshire Policies").

12.     Mr. Doe paid the premiums for the Guardian Policies and the Berkshire Policies (collectively, the "Policies") from the State of Colorado.

13.     The Policies were renewed annually from each year they were issued through now.

14.     The acts and omissions alleged in this Complaint, including Defendants' breach of the Policies, Defendants' breaches of the duties owed to Mr. Doe, and Defendants' tortious conduct, occurred in the State of Colorado.

15.     The injuries, damages, and losses Mr. Doe suffered as a result of Defendants' acts and omissions occurred in the State of Colorado.

16.     The amount in controversy exceeds $75,000.

17.     Because Plaintiff resides in the State of Colorado, Berkshire resides in the Commonwealth of Massachusetts, and Guardian resides in the State of New York, there exists complete diversity of citizenship and this Court has diversity jurisdiction under 28 U.S.C. § 1332 (a)(1).

18.     The Court has subject matter jurisdiction over the action under 28 U.S.C. 1332 and 28 U.S.C. §§ 1332(e) & (f).

19.     This Court has personal jurisdiction over Defendants as each conducts the business of insurance within the State of Colorado.

20.     As a substantial part of the events or omissions giving rise to the claim occurred in the State of Colorado, venue is proper in pursuant 28 U.S.C. § 1391(b)(2).

## II.     GENERAL ALLEGATIONS

### A.     THE DISABILITY INCOME POLICIES AT ISSUE

21.     Under the Policies, the Defendants promised that if Mr. Doe ever suffered a sickness that prevented him from performing the major duties of his occupation, they would consider him to be disabled and would protect him by paying insurance benefits to replace his lost income.

22.     Under the Policies, the Defendants promised to consider Mr. Doe disabled even if he was working in some capacity but was unable to work in his own occupation.

23.     When applying for the Policies, Mr. Doe informed Defendants that his occupation was President, Chief Operating Officer, and/or President and CEO of a national company. In doing so, Mr. Doe explained that in those roles half his time was spent on managing existing companies and half his time was spent on acquiring new ones.

24.     When selling and issuing the Policies to Mr. Doe, Defendants acknowledged his occupation included that of President and CEO.

25.     After obtaining each of the Policies, Mr. Doe timely paid his premiums each month from the time they were issued through the time he made a claim for benefits under the Policies. In fact, Mr. Doe has continued to pay the premiums on the Policies to this day.

26.     In January of 2018, Mr. Doe applied for benefits under the Policies, claiming that a sickness prohibited him from performing the major duties of his own occupation.

27.     On February 14, 2018, Defendants acknowledged receiving Mr. Doe's application and informed him that they would be requesting additional information from his medical providers.

28.     When Defendants received Mr. Doe's application for disability benefits, Defendants knew that the standard in the disability insurance industry required them to decide his disability claim within 45 days (and no more than 90 days) of receiving it.

29.     Defendants did not decide Mr. Doe's disability claim within 45 days of receiving it.

30.     For several months after receiving Mr. Doe's disability claim, Defendants allegedly investigated his claim, but they had little in the way of substantive communication with him regarding his claim.

31.     Although the Policies permitted Defendants to have Mr. Doe medically examined during its investigation of the claim, Defendants chose to not do so and denied his claim without first obtaining such an examination.

32.     By letter dated June 27, 2018 (133 days after receiving Mr. Doe's claim), Defendants informed Mr. Doe that it was denying his claim for LTD benefits under the Policies.

33.     In denying Mr. Doe's claim for disability benefits, Defendants acknowledged that he provided evidence that a sickness prevented him from performing the major duties of his own occupation.

34.     In denying Mr. Doe's claim for disability benefits, Defendants asserted that he did not provide "convincing evidence" supporting his claimed disability.

35.     The Policies do not require Mr. Doe to provide "convincing evidence" of a disability to obtain STD or LTD benefits.

36.     In denying Mr. Doe's claim for disability benefits, the medical records reviewer that Defendants hired to review Mr. Doe's records informed Defendants that it was "unclear" whether Mr. Doe was able to perform the major duties of his own occupation.

37.     Defendants obtained no other medical review to inform their claim decision.

38.     In denying Mr. Doe's claim for disability benefits, Defendants informed him that he could submit an internal appeal.

39.     To permit him to submit a complete appeal, Mr. Doe made several requests for the Defendants to provide him with the claim file before submitting his appeal.

40.     When receiving Mr. Doe's requests for the claim file, Defendants knew it was customary in the disability insurance industry for disability insurers to provide insureds with the claim file before they submit an internal appeal.

41.     Defendants repeatedly rejected Mr. Doe's requests for the claim file and ultimately forced him to submit an appeal without such information.

42.     Defendants' refusal to provide Mr. Doe with the claim file impaired his ability to receive a full and fair review of his internal appeal.

5

43.     By letter dated July 1, 2019, Mr. Doe submitted his internal appeal, which included additional evidence, such as a letter from his treating medical provider, a letter from Mr. Doe himself, and additional argument for why Defendants' rejection of his claim was improper.

44.     When Defendants received Mr. Doe's internal appeal, Defendants knew that industry standards required it to decide the appeal within 45 days.

45.     Defendants did not decide Mr. Doe's disability appeal within 45 days of receiving it.

46.     By letter dated August 30, 2019, Mr. Doe—having received no decision from Defendants—provided additional documentation and information for Defendants to consider, which Defendants acknowledged receiving by letter dated September 6, 2019.

47.     By letter dated September 9, 2019, Mr. Doe again provided additional evidence for Defendants' consideration.

48.     By letter dated October 1, 2019—three full months after receiving Mr. Doe's initial appeal letter—Guardian requested Mr. Doe to sign an updated Authorization to Release Information, claiming that it needed him to sign such a release so that it could have his claim and medical records reviewed by a medical expert.

49.     In asking Mr. Doe to sign the authorization, Defendants misrepresented that the authorization was "part of the policy's Proof of Loss requirement."

50.     The Policies' Proof of Loss provisions do not require Mr. Doe to sign the authorization tendered by Defendants.

51.     The Policies' Proof of Loss provisions state, "you may submit a written statement … for filing proof of loss, which proves the nature and extent of the loss for which a claim is made."

52.     In asking Mr. Doe to sign the Authorization to Release Information, Defendants misrepresented that if he revoked or failed to sign the authorization, "or alter[s] its content in any way, it may affect the handling of [his] claim, including the denial of benefits" under the Policies.

53.     None of the Policies state that if Mr. Doe fails to sign an unaltered Authorization to Release Information it could lead to the denial of his benefits or adversely affect his benefits in any way.

54.     The Policies include no mention of the specific Authorization to Release Information that Defendants requested Mr. Doe to sign.

55.     By letter dated October 4, 2019, Mr. Doe objected to Defendants' request for him to sign an unaltered Authorization to Release Information, because Defendants refused to identify who the records obtained by its use of the authorization would be sent to, and because the authorization Defendants were asking Mr. Doe to sign would allow it to obtain "any information" they wanted from "any other organization or person having any knowledge" of Mr. Doe and it would allow Defendants to share "any information" with any "other persons," while forcing him to acknowledge that "[i]nformation disclosed pursuant to this authorization is no longer covered by federal privacy rules and may be redisclosed pursuant to this authorization."

56.     In that same October 4, 2019, letter, Mr. Doe authorized Defendants to provide his medical records to an appropriate medical reviewer.

57.     By letter dated October 28, 2019, Defendants again misrepresented that without Mr. Doe signing an unaltered Authorization to Release Information, they would "be limited from having any medical documentation reviewed by medical experts," and again demanded that he "provide the signed and dated unaltered Authorization as soon as possible."

58.     By letter dated November 13, 2019, Mr. Doe provided Defendants with a HIPAA complaint authorization to disclose protected health information, which would have permitted Defendants to provide Mr. Doe's medical documents to any medical expert the Defendants deemed appropriate.

59. By letter dated November 26, 2019, Defendants acknowledged receiving Mr. Doe's signed authorization, made no objection to it, and informed him that their review of his appeal "remains ongoing and we will respond in due course."

60. By letter dated December 19, 2019, Defendants informed Mr. Doe that its review of his appeal "remains ongoing and we will respond in due course."

61. By letter dated January 15, 2020—more than six months after receiving Mr. Doe's initial appeal letter—Defendants upheld its prior decision rejecting his claim for disability benefits.

62. By letter dated January 15, 2020, Defendants once again misrepresented that without an unaltered Authorization to Release Information they were "unable to resolve conflicting information including your provision of current statements that don't reflect the contemporaneous record."

63. Mr. Doe's decision to not provide an unaltered Authorization to Release Information did not prevent Defendants from resolving conflicting information.

64. The HIPPA complaint authorization Mr. Doe submitted to Defendants by letter dated November 13, 2019, would have permitted Defendants to provide his medical records to a medical records reviewer to resolve any purported conflicting information.

65. By letter dated January 15, 2020, Defendants informed Mr. Doe that they were rejecting his assertion that his occupation at the time of his claimed disability included "managing existing companies (50%) and acquiring new companies (50%)."

66. As of January 15, 2020, Defendants knew that when Mr. Doe applied for the Policies, he informed Defendants his job duties included managing existing companies (50%) and acquiring new companies (50%).

67. In rendering its adverse benefit determinations, Defendants ignored evidence submitted by Mr. Doe that supported his claim.

68.     Since originally filing his claim for disability income insurance benefits, Plaintiff has been and remains disabled as the Policies define those terms.

69.     Plaintiff has satisfied all conditions precedent to receiving benefits under the Policies.

70.     Mr. Doe is entitled to benefits under the Policies.

71.     At all times pertinent hereto, Defendants were and continue to be liable for paying Mr. Doe's disability benefits under the Policies.

72.     Defendants' denial of Mr. Doe's disability benefits was contrary to the evidence of record and was unreasonable, incorrect, improper, and unsupported by the evidence.

73.     Defendants' acts and omissions have compelled Mr. Doe to institute litigation to recover benefits owed to him under the Policies.

74.     Defendants' acts and omissions are and were designed to discourage Mr. Doe from asserting his rights and claims with regard to disability benefits.

75.     Defendants' acts and omissions placed Defendants' interests in saving money ahead of Mr. Doe's interests in obtaining the disability benefits for which he had paid premiums.

76.     Defendants knew, or should have known, that their acts and omissions were unreasonable, or they recklessly disregarded the fact that they were unreasonable.

77.     As a direct and proximate result of the Defendants' conduct, Mr. Doe has suffered damages including, without limitation, loss of contract benefits, inconvenience, frustration, emotional distress, embarrassment, and financial harm.

### III.     FIRST CLAIM FOR RELIEF
### (Breach of Contract)

78.     Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

79.     The disability income Policies issued by Guardian and Berkshire constitute a contract of insurance.

80.     Plaintiff is entitled to disability income benefits as described throughout this Complaint, which are due and owing through the date of judgment.

81.     Through the acts and omissions described herein, as well as those yet to be uncovered through discovery, Defendants breached the contract of insurance.

82.     Defendants' breaches of the insurance contract have caused Plaintiff to suffer injuries, damages, and losses in amounts to be proven at trial.

## IV.     SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

83.     Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

84.     Defendants owed duties to Plaintiff under the Policies' implied covenant of good faith and fair dealing, wherein Defendants covenanted that they would, in good faith and in the exercise of fair dealing, deal with Plaintiff fairly and honestly, and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights to receive the benefits of the insurance contract.

85.     Defendants breached their duties of good faith and fair dealing by their acts and omissions, which included, without limitation, the following unreasonable acts:

a.     Disregarding the Plaintiff's rights or having a reckless disregard that its conduct was unreasonable;

b.     Requesting redundant, duplicative, unnecessary and irrelevant information and documentation from Plaintiff throughout the processing of the claim;

c.     Failing to properly investigate Mr. Doe's claim for benefits;

d.     Ignoring the opinions of Plaintiff's medical experts concerning the appropriate care received;

    e.      Selectively considering only those records and documents that supported their decision to deny benefits;

    f.      Failing to provide the claim file, claims procedures, manuals, or other information and thereby depriving Plaintiff of a complete understanding of the claim handling process and Policies' requirements;

    g.      Failing to render timely decisions on the claim and on appeal; and

    h.      Failing to pay Plaintiff's claim for disability benefits under the Policies;

    i.      Refusing to pay claims without conducting a reasonable investigation based upon all available information;

    j.      Denying and withholding Mr. Doe's benefits without a reasonable basis for doing so;

    k.      Placing their interests in not paying benefits ahead of Mr. Doe's interest in receiving benefits owed under the Policies; and

    l.      Other conduct to be revealed during discovery.

86.    Defendants knew their acts and omissions were unreasonable, or they recklessly disregarded the reasonableness of their acts and omissions.

87.    As a proximate result of Defendants' acts and omissions, Plaintiff has suffered damages and losses in an amount to be proven at trial, including, but not limited to:

    a.      The contract benefits;

    b.      Being forced to incur additional attorneys' fees and costs in the processing of his claim and in litigation;

    c.      Enduring the emotional trauma of being unnecessarily involved in a lawsuit with Defendant;

    d.      The adverse effect on his financial well-being from the denial of benefits; and

    e.      Other losses and damages as alleged herein and as to be disclosed and discovered through litigation.

88.    As a proximate result of the Defendants' acts and omissions, Plaintiff sustained economic losses, including without limitation the loss of the contract benefit.

89.     As a proximate result of the Defendants' acts and omissions, Plaintiff sustained compensable non-economic injuries, including without limitation, inconvenience, emotional stress, impairment of the quality of life, mental suffering, anguish, anxiety, annoyance, humiliation, indignity and loss of the enjoyment of life, in amounts to be proved at trial.

90.     As a proximate result of the Defendants' acts and omissions, Defendants have repudiated the Policies. Specifically, Defendants repudiated the Policies through the following conduct:

   a.  Failing to conduct a good faith investigation;

   b.  Failing to consider Mr. Doe's interests at least equal to their own;

   c.  Failing to consider all evidence supporting the claim and appeal;

   d.  Refusing to provide Mr. Doe with the information he needed to contest Defendants' decision during the internal appeals process (including their decision to withhold material in the claim file);

   e.  Failing to provide Mr. Doe with all benefits owed under the contract (including the monthly disability insurance benefit and the right to be medically examined before a claim decision is rendered);

   f.  Failing to diligently search for an consider evidence supporting Mr. Doe's claim;

   g.  Misrepresenting pertinent facts and insurance policy provisions;

   h.  Failing to reasonably assist Mr. Doe with his claims;

   i.  Denying Mr. Doe's claim even when, in the Defendants' own words, they were "unclear" about whether his disability impaired his ability to work;

   j.  Forcing Mr. Doe to sue to obtain the benefits owed to him under the Policies; and

k. Other conduct to be uncovered through discovery.

91.     Because Defendants have repudiated the Policies, Plaintiff is entitled to acceleration of all benefits owed under the Policies.

### THIRD CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115 and Relief under C.R.S. § 10-3-1116)

92.     Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

93.     Plaintiff is a "first-party claimant" as that term is defined under C.R.S. § 10-3-1115.

94.     Through the acts and omissions alleged herein, and others likely to be uncovered during discovery, Defendants unreasonably denied the payment of contractual benefits within the meaning of C.R.S. § 10-3-1115.

95.     Defendants unreasonably delayed the payment of contractual benefits from the date the were owed to the present.

96.     Under C.R.S. § 10-3-1116(1), Mr. Doe may bring an action in a district court to recover reasonable attorneys' fees, court costs, and two times the covered benefit.

97.     The unreasonable delay and denial of benefits entitles Plaintiff to an award against Defendants for reasonable attorney's fees, costs, and two times the contractual benefits delay and denied.

**WHEREFORE**, Plaintiff John Doe asks that judgment be entered in his favor and against the Defendant as follows:

1.  Declare that Plaintiff is disabled within the meaning of the disability income Policies and is entitled to the unpaid benefits described elsewhere in this Complaint;

2.  For compensatory economic, noneconomic, and special damages in amounts to be proven at trial;

3.  For acceleration of the disability insurance benefits owed under the Policies;

13

4.  For interest (statutory and moratory) as provided by law;

5.  For two times the covered benefit unreasonably delayed and denied, pursuant to C.R.S.

    § 10-3-1116;

6.  For two times the amount of the benefits unreasonably delayed and denied, pursuant

    to C.R.S. § 10-3-1116;

7.  For attorneys' fees and costs, including expert witness fees, as permitted by law; and

8.  For such other and further relief as the Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY

DATED this 10th day of April 2020 by,

McDERMOTT LAW, LLC

*s/ Timothy M. Garvey*

Timothy M. Garvey, #42668

Shawn E. McDermott, #21965

4600 S Ulster Street, Suite 800

Denver, CO 80237

(303) 964-1800

(303) 964-1900 (fax)

*tim@mcdermottlaw.net*

*shawn@mcdermottlaw.net*

**Attorneys for Plaintiff**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

JOHN DOE,

*Plaintiff*,

v.

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA and
THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,

*Defendant*.

---

## PLAINTIFF'S MOTION TO PROCEED USING PSEUDONYM

---

The Plaintiff, John Doe, by and through his counsel of record, McDermott Law, LLC, for his Complaint against Defendants Berkshire Life Insurance Company of America and Guardian Life Insurance Company of America, states, alleges, and avers as follows:

**Certificate of Conferral:** Plaintiffs have not conferred with the Defendants regarding the substance of this Motion, as counsel for the Defendants have not yet entered their appearance in this matter as of the time of the filing of this Motion (which was filed contemporaneously with the Complaint).

1.      In short, Plaintiff alleges in this lawsuit that he is disabled and entitled to disability insurance benefits from the Defendants, which were improperly denied to him.

2.      Prior to becoming disabled, Plaintiff was the President and CEO of a national business.

3.      Plaintiff's disability stems, at least in part, from a situation where he fired an employee and that employee then engaged in a series of threatening behaviors (against Mr. Doe, his family, and others) over the course of several years. This behavior resulted in Mr. Doe obtaining a restraining

Exhibit 1

order against the fired employee for himself and his family members. (Other employees of Mr. Doe's former employer also received restraining orders against the fired employee.) However, simply obtaining a restraining order did not stop the threats and acts, as the fired employee repeatedly violated the protection order, was arrested several times for doing so, and was jailed several times for doing so. But, even that did not stop him, as the fired employee even contacted Mr. Doe after spending time in jail. And, the fired employee did so, despite knowing that Mr. Doe had for several years (and at great expense) hired 24-hour armed security to surveil the fired employee and to protect Mr. Doe and his family.

4.      To the best of Plaintiff's knowledge, the fired employee still holds animosity toward Mr. Doe for having been fired.

5.      Mr. Doe is concerned that if his name and information are made publicly available through this proceeding, the fired employee—who has already repeatedly violated a permanent protection order—may decide to reengage in the threatening behavior of the past, exacerbating Mr. Doe's debilitating and disabling condition.

6.      While legal proceedings are—and should be—presumptively public, *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006), this case presents one of the few exceptional circumstances under which a party should be allowed to proceed anonymously. *See Femedeer v. Haun*, 227 F.3d 1244 (10th Cir. 2000). When, as here, highly sensitive and important privacy interests are at stake, courts may permit a plaintiff to proceed under a pseudonym. *M.M. v. Zavaras*, 139 F.3d 798, 802–03 (10th Cir. 1998). Indeed, in *Femedeer*, the Tenth Circuit adopted the Eleventh Circuit's test for determining when a plaintiff's privacy interest outweighs the important public interests at stake in a lawsuit, explaining:

> Lawsuits are public events. A plaintiff should be permitted to proceed
> anonymously only in those exceptional cases involving matters of a
> highly sensitive and personal nature, real danger of physical harm, or

> where the injury litigated against would be incurred as a result of the
> disclosures of the plaintiff's identity.

227 F.3d at 1246 (internal citations quoting *Doe v. Frank*, 951 F.3d 320, 324 (11th Cir. 1992) omitted).

7.     Court's typically grant a request to proceed under a pseudonym where just one of the

*Femedeer* factors is satisfied. *See, e.g., Doe through Doe v. Brighton School Dist. 27J*, 2019 WL 1573301 (D.

Colo. Apr. 11, 2019) (citing cases where courts permitted plaintiffs to proceed under a pseudonym

due just to "allegations of a highly sensitive and personal nature".).

8.     This standard is not limited to the Tenth Circuit, as courts throughout the country

have permitted plaintiffs to proceed anonymously in cases involving conditions associated with strong

social stigma, including (for example) mental illness (*Doe v. Colautti*, 592 F.2d 704 (3d Cir. 1979); *see*

*also Frank*, 951 F.2d at 324 ("In these cases, the social stigma attached to the plaintiff's disclosure was

found to be enough to overcome the presumption of openness in court proceedings.").

9.     Here, Mr. Doe's situation satisfies not just one of the *Femedeer* factors, it satisfies all of

them. First, Mr. Doe's disability is highly sensitive and personal, not only because of his prior abilities

as a high-functioning CEO and President of a nationwide corporation, but because his inability to

continue performing in that capacity is due, at least in part, to highly sensitive and personal matters

concerning Mr. Doe's diagnosed mental illnesses, including Post-Traumatic Stress Disorder

("PTSD"). Second, the disclosure of Mr. Doe's identity presents a real danger of physical harm, not

just to Mr. Doe, but to his entire family. Indeed, although Mr. Doe and his immediate family members

have a permanent protection order against the employee Mr. Doe previously fired, that individual

repeatedly violated that protection order and ended up in jail. And, even after then, he continued to

violate the protection order by contacting Mr. Doe. Mr. Doe's whereabouts are currently unknown to

the fired employee, and he would like to keep it that way, to avoid any harm to Mr. Doe and/or his

family members. Third, disclosure of Mr. Doe's identity would potentially exacerbate Mr. Doe's PTSD

symptoms, which are still not well controlled and render him disabled to this day.

10.     As such, Mr. Doe's case embodies precisely the "exceptional case" that necessitates proceeding under a pseudonym because his weighty, constitutionally protected, interest in privacy outweighs the public's interest in access to his identity in these otherwise open court proceedings.

11.     Finally, Mr. Doe's request will not hamper Defendants' abilities to defend this case. While Mr. Doe's Complaint (filed contemporaneously with the filing of this Motion) uses a pseudonym, it provides additional information (such as insurance policy numbers) that would permit the Defendants (but not the public) to identify Mr. Doe's true identity. Thus, the Defendants' ability to conduct discovery or mount a defense will not be impaired. *See, e.g., Roe v. Catholic Health Initiatives Colo.*, 2012 WL 12840 (D. Colo. Jan. 4, 2012). Likewise, Mr. Doe's suit is against a private, rather than governmental, entity, which lessens the public interest in this matter. *Id.* Finally, there are no less drastic means available to protect Plaintiff from the loss of privacy that underlies his request, and the request presently being made is less onerous than would be a request for the entire case to be restricted. *Id.*

12.     Accordingly, because Mr. Doe satisfies the test for permitting him to proceed under a pseudonym, because his interest in doing so outweighs the general expectation that lawsuits are public, and because Defendants will suffer no prejudice in permitting Mr. Doe to do so, he hereby requests that the Court grant the relief requested herein.

**WHEREFORE**, Plaintiff John Doe, moves this Court for permission to proceed in this matter under a pseudonym and such other and further relief that this Court deems just and proper.

Respectfully submitted this 10th day of April 2020,

McDERMOTT LAW, LLC

*s/ Timothy M. Garvey*

Timothy M. Garvey, #42668
Shawn E. McDermott, #21965
4600 S Ulster Street, Suite 800
Denver, CO 80237
(303) 964-1800
(303) 964-1900 (fax)
*tim@mcdermottlaw.net*
*shawn@mcdermottlaw.net*
***Attorneys for Plaintiff***

5

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and that served the foregoing via U.S. Mail to the following:

John Doe
*Plaintiff*

McDERMOTT LAW, LLC

*s/ Lisa J. Kantor*

Lisa J. Kantor
4600 S. Ulster Street, Suite 800
Denver, CO 80237
(303) 964-1800
(303) 964-1900 (fax)
*lisa@mcdermottlaw.net*

6